[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On October 3, 1996, the defendant, Planning Zoning Commission of the Town of Vernon, hereinafter "PZ", granted the application of the defendant, Harvey Feldman, d/b/a, hereinafter "Feldman", for a special permit, site plan approval and an excavation permit for the construction of a 20,500 square foot building to be used for warehousing, offices and associated customer services on a 9.03 acre parcel of land at 1084-1096 Hartford Turnpike. On or about October 22, 1996, the plaintiff, Evandro S. Santini, hereinafter "Santini", filed an appeal of such decision with this court. In this action, Santini is seeking, inter-alia, a temporary restraining order under Connecticut General Statutes §§ 8-8 (g) and 22a-16, et seq. A full hearing on said application for a temporary restraining order was held before this court on November 7, 1996 and November 14, 1996. Briefs were filed on November 14, 1996 and November 18, 1996.
In considering such application, the court is to use a "balancing of the equities" test. Under this test the court may consider (1) the reasonable probability of success by the appellant; (2) the irreparability of the injury to be suffered by the appellant; and (3) the effect of delay on other parties and CT Page 10161 the public in general. Griffin Hospital v. Commission onHospitals, 196 Conn. 451, 456-459 (1985).
1. The reasonable probability of success by the appellant on
the appeal.
(a). The court, at the end of the second day of hearing, focused on the issues raised by Santini as to the legality of Feldman's application and the validity of the notices of the public hearing and of the approval made by the PZ. This focus produced the supplemental briefs filed on November 18, 1996. The court finds based on the totality of the evidence that the applicant on the application and the applicant on all of the aforementioned notices was the defendant Feldman. Although the d/b/a on the application "Avalon, L.L.C." and the d/b/a in the notices "New England Foods, Inc." were technically different, the principal of both, the defendant Feldman, was on both the application and the notices. New England Foods, Inc. was also in the documents accompanying the application. The court finds the application and the notices to be adequate. They "enable(d) parties having an interest to know what is projected and, thus, to have an opportunity to protest." Jarvis Acres, Inc. v. ZoningCommission, 163 Conn. 41, 47 (1972). The application and notices contained sufficient information to fairly apprise interested people of the important parts of the application. Santini claims in his briefs that interested people should also know who the applicant is to enable them to evaluate the reputation and business practices of the applicant. They did know that the applicant was the principal, the defendant Feldman. There was no way they could have been misled by the application or notices. Further, "Zoning is concerned with the use of . . . buildings and lots and not primarily with their ownership." Petruzzi v. ZoningBoard of Appeals, 176 Conn. 479, 484 (1979).
(b). As for the remaining claims on the issue of the probability of appellant's success on appeal, the court, of course, at this early stage of the proceedings has not read the transcript nor reviewed the entire record. However, from the testimony and exhibits presented at the hearing the court believes there was sufficient evidence to believe that the PZ considered all of the regulations and issues pertinent to this application. The PZ apparently found the evidence, including the experts' testimony, of the applicant to be more credible than that of Santini. The PZ also relied upon the reports and opinions of the town staff which it had a right to do. As for the design and CT Page 10162 layout, the PZ had a right to accept the recommendations of the Design Review Advisory Committee[1] whose membership included experts, i.e. architects, engineers, and whose purpose was to lend its expertise to the PZ and conduct a more knowledgeable and specific review of the applicant's plans. The Committee held ten (10) hours of hearings on this application and heard from the experts of the plaintiff as well as those of the applicant. The court, of course, cannot substitute its judgment for that of the PZ, and at this point at least, there is not sufficient evidence presented by the plaintiff for the court to believe that the PZ's decision was illegal, arbitrary, capricious or an abuse of discretion. The plaintiff has not sustained his burden of showing a reasonable probability of his success on the appeal.
2. Irreparable Harm:
In order for the court to find irreparable harm, it must appear that there is "a substantial probability that but for the issuance of the injunction, the party seeking it will suffer irreparable harm". Karls v. Alexandra Realty Corporation,179 Conn. 390, 402 (1980).
In this case, Santini has two claims of irreparable harm.
(a) The first is that by Feldman removing 300 feet of frontage trees, or at least a substantial portion thereof, the removal will be irreparable, and the court finds that to be true. However, the court does not find that the removal of these trees will adversely affect the view and value of Santini's apartments across the street on the north side of Hartford Turnpike. In addition to the evidence presented in court, this court, with the oral consent of the parties, personally and alone visited the subject site and assessed the proposed building's impact upon Santini's apartments. The court noticed that the apartments in question appear to be at least 300 yards back from and northerly of Hartford Turnpike. There are trees on the edge of Santini's property similar to those that are to be removed by Feldman. Although there are some gaps in Santini's line of trees, they are minimal, and with Feldman's removal of his trees, there would be an effect upon the view from, at the most, only one apartment building with only two windows facing southerly. There is also a one family home on the north side of Hartford Turnpike which has huge fur trees in the front. This house with these trees restricts the view from other apartments that are easterly of the aforementioned one building. As for the height of the proposed CT Page 10163 warehouse, it may be a tall building but it is to be constructed from a lower level than that of an existing industrial park shortly to the west on the same side of the road, which buildings are built on much higher ground resulting in the total height of the Feldman building not being dissimilar to that of the buildings in the industrial park. Further, the court notes that the warehouse is to be built in an industrial zone, and it appears that with industrial buildings to the west and commercial buildings to the west and east of the warehouse on the same side of Hartford Turnpike, the proposed structure is compatible with the character of the surrounding neighborhood. Accordingly, the court finds the impact upon Santini's apartments to be minimal and it does not rise to a level that can be called harmful.
As for Santini's claim that the removal of the trees will cause a detrimental environmental impact, the court is not persuaded. There will be trees and other landscaping installed by Feldman that will offset any negative environmental impact by the removal of the trees. Suffice it to say that the plaintiff has not shown, taking into account the totality of the evidence, either that he has established a prima facie case or has proven by a preponderance of the evidence that there will be a detrimental environmental impact upon the area.
(b) Drainage. The second claim of irreparable harm is that the proposed development will cause an increase in volume of water and pollutants to flow onto Santini's property and will irreparably harm Santini's capacity and ability to process pollutants on his property as well as impede further development of his property. On this issue there is disagreement by the experts. This court was more impressed with the testimony of John Ianni, Feldman's soil scientist, who found that there would be no negative impact on the capacity and ability of Santini's existing detention basin to process pollutants on his property than the testimony of Dr. Harvey Luce, Santini's expert on this subject, which the court found to be too speculative. Both did find that Santini's detention basin had considerable excess capacity for his own developments. Further, if Mr. Ianni is wrong, and there is a negative impact as claimed, the plaintiff is not without remedy. There is an alternative that Mr. Ianni found to be not as good, but in the event he is wrong, the plaintiff could then bring an action to require Feldman to use that alternative.
As for the possible effect of the soil erosion plan, the court is satisfied that the monitoring of it by the Town and the CT Page 10164 bond which has been provided by Feldman will take care of problems that might arise.
The court has balanced the equities and finds there will be no irreparable harm to the plaintiff by the proposed actions of Feldman, and that there will be a negative and substantial effect upon Feldman and the public if the restraining order/injunction plaintiff is seeking is granted. Based upon the totality of the evidence the court finds that an injunction/restraining order could easily ruin Feldman financially, have severe negative consequences for his employees and their families, and deprive the taxpayers of Vernon the opportunity to buy food at Feldman's on site retail outlet as well as deprive them of the tax revenue to the Town that would be generated by the proposed development. Santini dismisses the impact as being only economic. The court finds there would be negative social and intrinsic losses as well. Further, Santini's claim also includes a claim of economic harm by the alleged loss of rental income and the alleged reduction in value of his existing property.
In sum, balancing the equities, the court finds the equities of the case favor Feldman for all the reasons set forth above. Accordingly, based upon the standards initially described herein, the application for a temporary restraining order/injunction is denied.
Rittenband, J.